**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTTERN DIVISION**

| | |
|---|---|
| BRIDGE FUNDING GROUP, INC.,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>ALVAREZ & HEARNE HOLDINGS, LLC,  )<br>DRA FITNESS, LLC, HEARNE FITNESS, LLC,  )<br>JOMIL, LLC, ADRYENNE Y. HEARNE-  )<br>ALVAREZ, DEREK M. HEARNE, RAFAEL  )<br>ALVAREZ,  )<br>UNITED STATES SMALL BUSINESS  )<br>ASSOCIATION, CORPORATE SERVICES  )<br>COMPANY as representative, V CAP GROUP,  )<br>CT CORPORATE SYSTEMS as representative,  )<br>)<br>Defendants.  ) | Case No.  1:24-cv-4631 |

**VERIFIED COMPLAINT FOR CONFESSION OF JUDGMENT**

Plaintiff, Bridge Funding Group, Inc. ("BFG") for its Verified Complaint for Confession of Judgment against Defendants Alvarez & Hearne Holdings, LLC, DRA Fitness, LLC, Hearne Fitness, LLC, and JOMIL, LLC (collectively, "Borrowers"), Adryenne Y. Hearne-Alvarez ("Adryenne"), Derek M. Hearne ("Hearne"), and Rafael Alvarez ("Rafael", and collectively with Borrowers, Adryenne, and Hearne, the "Guarantors"), and the United States Small Business Association, Corporate Services Company, V Cap Group, and CT Corporate Systems (collectively the "Junior Lienholders") respectfully states, in addition to the Declaration of Michael McShane filed herewith, as follows:

**Nature of the Case**

1. This is an action for Confession of Judgment against Borrowers and each of the Guarantors (collectively, the "Defendants") pursuant to 735 ILCS 5/2-1301(c) in connection with

1

a Loan and Security Agreement, securing a first loan for the principal sum of $1,767,364.19 and a second loan for the principal amount of $550,000.00, both of which are currently in default because of Borrowers' failure to pay when due and for declaratory relief with respect to the corporate governance of Borrower.

## The Parties and Related Entities

2. Plaintiff BFG is a Delaware corporation with its principal place of business located in Maryland.

3. Defendant Alvarez & Hearne Holdings, LLC is an Illinois limited liability company and its members are at least Adryenne and Hearne.

4. Defendant DRA Fitness, LLC is an Illinois limited liability company and its members are at least Adryenne and Hearne.

5. Defendant Hearne Fitness, LLC is an Illinois limited liability company and its members are at least Adryenne and Hearne.

6. Defendant JOMIL, LLC is an Illinois limited liability company and its members are Adryenne and Hearne.

7. Defendant Adryenne is a resident of and domiciled in Frankfort, Illinois.

8. Defendant Hearne is a resident of and domiciled in Chicago, Illinois.

9. Defendant Rafael is a resident of and domiciled in Frankfort, Illinois.

10. The Junior Lienholders are identified in public records as holding UCC financing statements junior to those held by BFG as to Defendants in this matter.

## Jurisdiction and Venue

11. This Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because (a) BFG is a citizen of the State of Maryland and each of the

Defendants is a resident of the State of Illinois such that there is complete diversity between BFG and Defendants because none of the Defendants are a resident of Maryland, and (b) the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

12. This Court has personal jurisdiction over each of the Defendants and venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391. Each of the Defendants is organized under the laws of the State of Illinois and/or is doing business within the State of Illinois. Moreover, a substantial part of the events or omissions giving rise to BFG's claims occurred within this district.

## Background

13. On or about April 19, 2019, Borrowers obtained a loan in the principal amount of $1,767,364.19 from BFG (the "First Loan") pursuant to a Loan and Security Agreement (the "Loan and Security Agreement"). The limited liability company Defendants granted BFG a security interest in all of the property of the limited liability company Defendants, of any kind or description, tangible or intangible, excepting general intangibles, whether now existing or hereinafter acquired. (the "Collateral"), including but not limited to the following:

> all of Borrower's personal property and fixtures, wherever located and, now owned or hereafter acquired, including: any equity interests, including but not limited to, membership interests, stock, partnership interests, development rights, accounts, chattel paper, inventory, equipment, instruments (including promissory notes), investment property, documents, deposit accounts, letter-of-credit rights, general intangibles (including payment intangibles, software licenses and credit card receipts), supporting obligations, any rights to or under any franchise or licensing agreements, all rights to use intellectual property, including, but not limited to all membership lists or databases, agreements, patents, patent applications, patent disclosures and inventions; trademarks, service marks, trade dress, logos, trade names, corporate names and Internet domain names; copyrights and copyrightable works; information systems, databases and software; websites and web addresses; licenses, registrations, applications and renewals for any of the foregoing; trade secrets (as defined by applicable law) and all derivations, modifications and enhancements to any of the foregoing, any fees or royalties due in connection with any licensing agreements granting franchisees the right to use such

>trademarks and service marks, and, to the extent not listed above as original collateral, proceeds and products of the foregoing.

A true and correct copy of the Loan and Security Agreement is attached hereto as <u>Exhibit 1</u>. The First Loan is evidenced by that certain First Secured Promissory Note dated as of April 19, 2019 (the "First Note") between BFG and Borrowers. A true and correct copy of the First Note is attached hereto as <u>Exhibit 2</u>.

14. On or about April 22, 2019, Borrowers obtained a loan in the principal amount of $550,000.00 from BFG (the "Second Loan") subject to the Loan and Security Agreement. The Second Loan is evidenced by that certain Second Secured Promissory Note dated as of April 22, 2019 (the "Second Note") between BFG and Borrowers. A true and correct copy of the Second Note is attached hereto as <u>Exhibit 3</u>.

15. The First Loan and Second Loan were secured by the Collateral and further secured by and payment and performance of the First Note and Second Note were guaranteed by each of the Guarantors pursuant to those certain Guarantees dated as of April 19, 2019 (each a "Guaranty" and collectively the "Guarantees") between BFG and each of the Guarantors, including:

    a. Guaranty dated April 19, 2019 between BFG and Derek Hearne (the "Hearne Guaranty"), a true and correct copy of which is attached hereto as <u>Exhibit 4</u>;

    b. Guaranty dated April 19, 2019 between BFG and Adryenne Hearne-Alvarez (the "Adryenne Guaranty"), a true and correct copy of which is attached hereto as <u>Exhibit 5</u>;

    c. Guaranty dated April 19, 2019 between BFG and Rafael Alvarez (the "Rafael Guaranty"), a true and correct copy of which is attached hereto as <u>Exhibit 6</u>.

16. Under the Guarantees, each of the Guarantors unconditionally and irrevocably granted full and punctual payment and satisfaction of the indebtedness of Borrowers to BFG for the First Loan and the Second Loan and all of Borrowers' obligations to BFG under the First Note and the Second Note and other loan documents.

17. Borrowers defaulted under the First Note and the Second Note by, among other defaults, failing to timely pay the payment of $21,271.01 on January 1, 2024 and by failing to satisfy other obligations under the First Note and the Second Note (the "Defaults").

18. On January 30, 2024, BFG delivered by mail a notice of default (the "Default Notice") to Borrowers and Guarantors. A true and correct copy of the Default Notice is attached hereto as <u>Exhibit 7</u>.

19. The amounts due under the First Note and Second Note were accelerated and neither Borrowers nor Guarantors have paid to BFG the amounts due and owing under the First Loan and the Second Loan or otherwise cured any of the Defaults as required under the First Note, the Second Note, and the Guarantees. The Guarantors are in default under their respective Guarantees.

20. As of May 1, 2024, the amount of principal and interest due and owing to BFG under the First Loan and the Second Loan and pursuant to the First Note and the Second Note is $1,653,701.51 (comprised of $1,591,601.63 in principal and $62,099.88 in interest). This amount is exclusive of late fees and attorneys' fees, costs and expenses. Prejudgment interest continues to accrue pursuant to the First Note and the Second Note in the amount of $488.97 per day for the first month after January 1, 2024 and increases thereafter due to compounding. After January 1, 2024, a late charge equal to ten percent (10.00%) applies to any late payment pursuant to the First Note and the Second Note.

21. Because BFG has placed the First Note, the Second Note, and the Guarantees in the hands of its attorneys for collection and has brought this action, Borrowers and Guarantors must also now pay all attorneys' fees, expenses, and other reasonable costs of collection (the "Enforcement Costs"), as provided under the First Note, the Second Note, and the Guarantees.

22. BFG has performed all of its obligations under each of the First Note, the Second Note, and the Guarantees.

**COUNT I – Confession of Judgment Against Borrowers**

23. BFG restates and incorporated by reference herein the allegations asserted in paragraphs 1 through 22.

24. BFG owns the First Note and the Second Note and other related documents executed and delivered for value by the Borrowers.

25. Both the First Note and the Second Note delivered to BFG by Borrowers contain the following language regarding confession of judgment:

> Upon the Borrower's failure to make a payment as and when due under this Note, the Borrower hereby authorizes any attorney designated by the Lender or any clerk of any court of record to appear for the Borrower in any court of record and to confess judgment without prior hearing against the Borrower in favor of the Lender for and in the amount of the unpaid Principal Sum, all interest accrued thereon and unpaid thereon, all other amounts payable by the Borrower to the Lender under the terms of this Note or any of the other Loan Documents, costs of suit, and reasonable attorneys' fees and interest then due hereunder. The Borrower hereby releases, to the extent permitted by applicable law, all rights of exemption, appeal, stay of execution, inquisition and other rights to which the Borrower may otherwise be entitled under the laws of the United States of America or of any state or possession of the United States of America now in force and which may hereafter be enacted. The authority and power to appear for and enter judgment against the Borrower shall not be exhausted by one or more exercises there of or by any imperfect exercise thereof and shall not be extinguished by any judgment entered pursuant thereto. Such authority may be exercised on one or more occasions or from time to time in the same or different jurisdictions as often as the Lender shall deem necessary or desirable, for all of which this Note shall be sufficient warrant.

Ex. 1, ¶ 11.

26. As of May 1, 2024, BFG has been damaged in the amount of $1,653,701.51, plus late fees and Enforcement Costs related to the Defaults under the First Note and the Second Note.

27. BFG has incurred and continues to incur Enforcement Costs related to the enforcement of the First Note and the Second Note.

28. Accordingly, BFG seeks judgment by confession against Borrowers in the amount of $1,653,701.51 plus interest that continues to accrue at the rate of $488.97 per diem under the First Note and the Second Note from and after January 1, 2024 (and compounding monthly thereafter) plus all late fees and Enforcement Costs.

WHEREFORE, Plaintiff BFG requests that judgment be entered in its favor and against Borrowers in the amount of $1,653,701.51, plus all applicable interest and late fees that have accrued and continue to accrue from and after January 1, 2024, plus all Enforcement Costs, and for such other relief as this Court may deem just and proper.

## COUNT II – Confession of Judgment Against Adryenne

29. BFG restates and incorporates by reference herein the allegations asserted in paragraphs 1 through 28.

30. BFG owns the instruments comprised of the First Note, the Second Note, the Adryenne Guaranty and other related documents, executed and delivered for value received by Borrowers and Adryenne.

31. The Adryenne Guaranty delivered to BFG by Adryenne contains the following language regarding confession of judgment:

> Confession of Judgment. Upon the Borrower's failure to make a payment under the Note as and when due, Guarantor authorizes any attorney admitted to practice

7

>before any court of record in the United States to appear on behalf of Guarantor in any court having jurisdiction in one or more proceedings, or before any clerk thereof or prothonotary or other court official, and to confess judgment against Guarantor, without prior notice or opportunity of Guarantor for prior hearing, in favor of Lender for an amount equal to the Guarantor's Obligations as declared due in Section 7(a) above plus all other amounts due and payable by Guarantor hereunder including costs of suit, and reasonable attorney's fees. Guarantor hereby waives and releases, to the extent permitted by law, all errors and all rights of exemption, appeal, stay of execution, inquisition and extension upon any levy on real estate or personal property to which Guarantor may otherwise be entitled under the laws of the United States or of any state or possession of the United States now in force or which may hereafter be passed. The authority and power to appear for and enter judgment against Guarantor shall not be exhausted by one or more exercises thereof, or by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto. Such authority and power may be exercised on one or more occasions, from time to time, in the same or different jurisdictions, as often as Lender shall deem necessary or desirable, for all of which this Guaranty shall be a sufficient warrant.

Ex. 4, ¶ 7(c).

32. As of January 1, 2024, BFG has been damaged in the amount of $1,653,701.51 plus all Enforcement Costs related to the Defaults under the First Note and the Second Note and the Adryenne Guaranty.

33. Accordingly, BFG seeks judgment by confession against Adryenne in the amount of $1,653,701.51 plus interest that continues to accrue at the rate of $488.97 per diem under the First Note and the Second Note for the first month from and after January 1, 2024, plus Enforcement Costs, and for such other relief as this Court may deem just and proper.

WHEREFORE, Plaintiff BFG requests that judgment be entered in its favor and against Adryenne in the amount of $1,653,701.51, plus all applicable interest and late fees that have accrued and continue to accrue from and after January 1, 2024, plus all Enforcement Costs, and for such other relief as this Court may deem just and proper.

**COUNT III – Confession of Judgment Against Hearne**

34. BFG restates and incorporates by reference herein the allegations asserted in paragraphs 1 through 28.

35. BFG owns the instruments comprised of the First Note, the Second Note, the Hearne Guaranty and other related documents, executed and delivered for value received by Borrowers and Hearne.

36. The Hearne Guaranty delivered to BFG by Hearne contains the following language regarding confession of judgment:

> <u>Confession of Judgment</u>. Upon the Borrower's failure to make a payment under the Note as and when due, Guarantor authorizes any attorney admitted to practice before any court of record in the United States to appear on behalf of Guarantor in any court having jurisdiction in one or more proceedings, or before any clerk thereof or prothonotary or other court official, and to confess judgment against Guarantor, without prior notice or opportunity of Guarantor for prior hearing, in favor of Lender for an amount equal to the Guarantor's Obligations as declared due in Section 7(a) above plus all other amounts due and payable by Guarantor hereunder including costs of suit, and reasonable attorney's fees. Guarantor hereby waives and releases, to the extent permitted by law, all errors and all rights of exemption, appeal, stay of execution, inquisition and extension upon any levy on real estate or personal property to which Guarantor may otherwise be entitled under the laws of the United States or of any state or possession of the United States now in force or which may hereafter be passed. The authority and power to appear for and enter judgment against Guarantor shall not be exhausted by one or more exercises thereof, or by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto. Such authority and power may be exercised on one or more occasions, from time to time, in the same or different jurisdictions, as often as Lender shall deem necessary or desirable, for all of which this Guaranty shall be a sufficient warrant.

Ex. 3, ¶ 7(c).

37. As of January 1, 2024, BFG has been damaged in the amount of $1,653,701.51 plus all Enforcement Costs related to the Defaults under the First Note and the Second Note and the Hearne Guaranty.

38. Accordingly, BFG seeks judgment by confession against Hearne in the amount of $1,653,701.51 plus interest that continues to accrue at the rate of $488.97 per diem under the

First Note and the Second Note for the first month from and after January 1, 2024, plus Enforcement Costs, and for such other relief as this Court may deem just and proper.

WHEREFORE, Plaintiff BFG requests that judgment be entered in its favor and against Hearne in the amount of $1,653,701.51, plus all applicable interest and late fees that have accrued and continue to accrue from and after January 1, 2024, plus all Enforcement Costs, and for such other relief as this Court may deem just and proper.

### COUNT IV – Confession of Judgment Against Rafael

39. BFG restates and incorporates by reference herein the allegations asserted in paragraphs 1 through 28.

40. BFG owns the instruments comprised of the First Note, the Second Note, the Rafael Guaranty and other related documents, executed and delivered for value received by Borrowers and Rafael.

41. The Rafael Guaranty delivered to BFG by Rafael contains the following language regarding confession of judgment:

> Confession of Judgment. Upon the Borrower's failure to make a payment under the Note as and when due, Guarantor authorizes any attorney admitted to practice before any court of record in the United States to appear on behalf of Guarantor in any court having jurisdiction in one or more proceedings, or before any clerk thereof or prothonotary or other court official, and to confess judgment against Guarantor, without prior notice or opportunity of Guarantor for prior hearing, in favor of Lender for an amount equal to the Guarantor's Obligations as declared due in Section 7(a) above plus all other amounts due and payable by Guarantor hereunder including costs of suit, and reasonable attorney's fees. Guarantor hereby waives and releases, to the extent permitted by law, all errors and all rights of exemption, appeal, stay of execution, inquisition and extension upon any levy on real estate or personal property to which Guarantor may otherwise be entitled under the laws of the United States or of any state or possession of the United States now in force or which may hereafter be passed. The authority and power to appear for and enter judgment against Guarantor shall not be exhausted by one or more exercises thereof, or by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto. Such authority and power may be exercised on one or more occasions, from time to time, in the same or

> different jurisdictions, as often as Lender shall deem necessary or desirable, for all of which this Guaranty shall be a sufficient warrant.

Ex. 5, ¶ 7(c).

42. As of January 1, 2024, BFG has been damaged in the amount of $1,653,701.51 plus all Enforcement Costs related to the Defaults under the First Note and the Second Note and the Rafael Guaranty.

43. Accordingly, BFG seeks judgment by confession against Rafael in the amount of $1,653,701.51 plus interest that continues to accrue at the rate of $488.97 per diem under the First Note and the Second Note for the first month from and after January 1, 2024, plus Enforcement Costs, and for such other relief as this Court may deem just and proper.

WHEREFORE, Plaintiff BFG requests that judgment be entered in its favor and against Rafael in the amount of $1,653,701.51, plus all applicable interest and late fees that have accrued and continue to accrue from and after January 1, 2024, plus all Enforcement Costs, and for such other relief as this Court may deem just and proper.

**COUNT V – Foreclosure of Security Interest in Collateral**

44. BFG restates and incorporates by reference herein the allegations asserted in paragraphs 1 through 28.

45. Defendants' indebtedness owed to BFG is secured by the Collateral and BFG is entitled to foreclose on such Collateral under the Loan and Security Agreement and applicable law, including Article 9 of the Uniform Commercial Code as enacted in the State of Illinois.

46. BFG properly perfected its security interest in the Collateral. A true and correct copy of the UCC Financing Statements are attached hereto as <u>Group Exhibit 8</u>.

47. Pursuant to the terms of the Loan and Security Agreement, if a default occurs, at any time thereafter, BFG shall have the rights of a secured party under the Illinois Uniform

Commercial Code and may declare all obligations secured by the Collateral immediately due and payable, and, in its sole discretion, may proceed to enforce payment of Defendants' obligation and may exercise any of the rights and remedies available to a secured party by law.

48. BFG's rights in the Collateral are first, superior and prior to any rights, liens, or security interest of any person or entity in and to the Collateral, including the rights of the Defendants.

49. Accordingly, and as a result of the Defendants' breach of the Loan and Security Agreement and the Notes and Guaranties herein, BFG is entitled to: (i) possession of the Collateral, including access to and inspection of all books and records and other financial information relating thereto; (ii) collect all monetary benefits derived from or generated by the Collateral or otherwise held by the Defendants; (iii) foreclose any right, claim, or interest junior to BFG's security interest; and/or (iv) dispose of the Collateral through one or more private or public sales held in accordance with further judgment and order of this Court with the remaining proceeds, if any, deposited with the Court for distribution in accordance with further order of the Court.

50. BFG does not offer to accept the Collateral in full satisfaction of all obligations under the Loan and Security Agreement, the Notes, or the Guaranties.

WHEREFORE, BFG respectfully requests this Court to:

a. Enter judgment in favor of BFG and against Defendants for the principal amount due and owing under the Loan and Security Agreement, Notes, and Guaranties, plus accrued interest, costs, fees, and expenses, incurred by BFG pursuant to the same;

b. Enter judgment of foreclosure and sale directing that the Collateral be sold to partially satisfy the total indebtedness due and owing under the Loan and Security Agreement, Notes, and Guaranties;

      c. An order granting BFG immediate possession and ownership of so much of the Collateral as may be in the form of money; and

      d. Such other relief as this Court may deem just and proper.

Dated: May __, 2024

Respectfully submitted,

BRIDGE FUNDING GROUP, INC.

By: /s/ Jennifer Gordon, Esquire
*One of its Attorneys*

Jennifer L. Gordon
Lorium Law
401 N. Michigan Ave., Ste 1200
Chicago, IL 60611
Tel: (312) 564-5757
jgordon@loriumlaw.com